UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LESLIE A. CHILDRESS,

      Plaintiff,

v.

                                  CASE No. 8:16-CV-753-T-23TGW

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,[1]

      Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, I recommend that the decision be affirmed.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security and should therefore be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was fifty-four years old at the time of the administrative hearing and who went to technical school, has worked primarily as a court reporter (Tr. 98, 104, 427, 521).[3] She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on December 31, 2007, due to severe incapacitating osteoarthritis, major depression, anxiety disorder, skin cancer, herniated discs in her neck and back, right ankle pain, numbness in both hands, high blood pressure, severe headaches, nerves, chronic bronchitis, chronic obstructive pulmonary disease, fibromyalgia and diabetes (Tr. 97, 426, 520).[4] The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. On July 21, 2010, the law judge determined that the plaintiff was not disabled (Tr. 151). The plaintiff appealed the law judge's decision. Thereafter, on June 24, 2011, the Appeals

---

[3] At the administrative hearing, the plaintiff testified that she had "some college" (Tr. 98).

[4] Originally, the plaintiff alleged a disability onset date as of January 1, 2003 (Tr. 344). However, at the most recent administrative hearing, plaintiff's counsel amended her onset date to December 31, 2007, the last date she is insured (Tr. 14, 97).

Council vacated the law judge's decision and remanded it for further proceedings (Tr. 167-168). In a decision dated June 22, 2012, a different law judge determined that the plaintiff "was not disabled prior to August 13, 2010, (20 CFR 404.1520(f) and 416.920(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g))" (Tr. 191). The law judge further concluded that the plaintiff was not disabled "at any time through December 31, 2007, the date last insured or from the filing date of the Title XVI application (August 22, 2008) through August 12, 2010 (the day prior to the established onset date of disability) (20 CFR 404.315(a) and 404.320(b))" (id.). Subsequently, the plaintiff appealed the decision.

In an Order of Appeals Council dated January 24, 2014, the Appeals Council "vacate[d] the hearing decision in total and remand[ed] [the] case for further proceedings" (Tr. 200). The Appeals Council reasoned that the decision was "conflicted regarding the disability onset date" and that the opinion of treating physician, Dr. Michael D. Boehm, needed to be "[g]ive[n] further consideration" and the weight given to the opinion needed to be explained (Tr. 200, 201).

Subsequently, an additional hearing was conducted in the case on May 20, 2014 (Tr. 92-132). After the hearing, the law judge found that the plaintiff had severe impairments of "degenerative disc disease (DDD), fibromyalgia, obesity, asthma, and arthritis of the right ankle (20 CFR 404.1520(c) and 416.920(c))" (Tr. 17). He concluded that, with these impairments (Tr. 22):

> the [plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: occasionally climbing, balancing, stooping, kneeling, crouching and crawling and avoiding concentrated exposure to irritants such as fumes, odors, dusts and gases.

The law judge found, based on the testimony of a vocational expert, that the plaintiff could perform her prior sedentary job of court reporter (Tr. 28). Accordingly, he decided that the plaintiff was not disabled (Tr. 29). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

Further, in order to be awarded disability benefits, the plaintiff must have become disabled before her insured status expired on December 31, 2007. There is not a similar requirement with respect to supplemental security income.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004) (<u>en</u> <u>banc</u>), <u>cert.</u> <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff challenges the law judge's decision on six grounds. The plaintiff argues the law judge erred in his credibility determination in rejecting her subjective complaints of pain, failed to give proper weight to her friend's testimony, failed to give substantial weight to her treating physicians' opinions, erred in not seeking the opinion of a medical expert, erred in determining that her mental impairments were not severe impairments, and erred in relying on the vocational expert's testimony that was based on an incomplete hypothetical question.

### A.    Credibility Determination

The plaintiff first argues that the law judge erred in failing to make a proper credibility finding and in improperly discrediting the plaintiff's subjective complaints (Doc. 15, pp. 4-7). This contention lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment that could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 22). Further, he set out the two-step process governing credibility

determinations.  Indeed, the law judge cited to <u>Landry</u> v. <u>Heckler</u>, in his decision (<u>id</u>.).  This demonstrates that the law judge employed the proper standards.  <u>See</u> <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge discussed the medical evidence in detail (Tr. 23-25).  In that discussion, he pointed to findings and notes that undercut a claim of disability.  The law judge then set forth the following credibility finding (Tr. 25):

> In sum, the [plaintiff's] longitudinal medical history is not necessarily consistent with her allegations of disability.  Despite the complaints of allegedly disabling impairments and associated symptoms, including chronic pain, with an inability to lift any amount of weight or to perform activities of daily living without difficulty and/or assistance, the record indicates that the [plaintiff's] remote surgical intervention and ongoing routine and/or conservative treatments have been generally successful in controlling those impairments and associated symptoms, when compliant.  Of note, while the undersigned acknowledges the [plaintiff's] contention that she did not have any health insurance and was constrained financially from seeking medical treatment and/or obtaining medications, the issue is her inability to perform work and not the need for medical treatment or medications.  In addition, the objective clinical studies and diagnostic tests have generally revealed no more than mild-to-moderate findings, given the

discussions in this decision. Further, the record reflects that the [plaintiff] had stopped taking her pain medication on the advice of her treating psychiatrist, who indicated that the [plaintiff's] mental condition was improving in January 2011 and that her panic attacks and depression were under control on medications in September 2011. Moreover, subjectively, the [plaintiff] has admitted certain abilities that provide support for part of the residual functional capacity conclusion in this decision, such as performing personal care, doing light household chores and laundry, cooking, driving, walking, shopping (in stores and by telephone and mail), running around doing errands, going to yard sales, watching television, reading, spending time with others, and helping take care of her dog, horse and chickens. Therefore, the undersigned finds that the [plaintiff's] subjective pain complaints and alleged limitations are not fully credible and that the record supports this inconsistency of subjective complaints versus objective findings as discussed throughout this decision.

The plaintiff complains that the law judge "simply discredited the Claimant's allegations because she is able to perform some personal grooming, shops, and goes to yard sales" (Doc. 15, p. 6). As the lengthy credibility finding that was just quoted shows, the law judge did not discredit the plaintiff's testimony simply on the basis of the plaintiff's daily activities. Moreover, the regulations expressly provide that in assessing a plaintiff's

alleged symptoms, the law judge should consider the claimant's daily activities. 20 C.F.R. 404.1529(c)(3)(i), 416.929(c)(3)(i).

In addition, the plaintiff's criticism of the law judge's consideration of the plaintiff's daily activities is unavailing. Thus, the plaintiff relies only upon her hearing testimony to dispute the law judge's assessment of the plaintiff's daily activities (Doc. 15, p. 6). The law judge was evaluating the credibility of the plaintiff's hearing testimony by reference to admissions elsewhere in the record concerning her daily activities (Tr. 25). The plaintiff cannot boot-strap the credibility of her hearing testimony by reference to that same testimony. Consequently, the plaintiff's daily activities, as found by the law judge, along with the other circumstances detailed by the law judge, support the law judge's credibility determination.

In challenging the law judge's finding, the plaintiff also asserts that the law judge "makes no mention in his decision of Claimant's fibromyalgia when evaluating Claimant's subjective complaints" and "[t]his illness produces subjective pain that cannot be objectively evaluated" (Doc. 15, p. 6). This conclusory assertion is not supported by any legal or record citation. The Scheduling Order and Memorandum Requirements provide that

"any ... challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). It adds, "Any contention for which these requirements are not met will be deemed forfeited" (id.). Since this assertion concerning fibromyalgia is supported neither by citation to the record nor to governing legal principles, it is appropriately considered forfeited.

Regardless, in light of the lack of development of this contention, no merit has been shown. The plaintiff apparently was referring to the fact that the hallmark of fibromyalgia is a lack of objective evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Accordingly, the Eleventh Circuit has held that it is reversible error to discount the credibility of a claimant with fibromyalgia on the basis of a lack of objective evidence (id.). But, that is not the case here.

The law judge obviously considered the plaintiff's claim of fibromyalgia, since he found that it was a severe impairment. However, that finding seems charitable because no doctor has rendered a diagnosis of fibromyalgia.

"Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." <u>Sarchet</u> v. <u>Chater</u>, 78 F.3d 305, 307 (7th Cir. 1996). The plaintiff's treating physician in 2013, Dr. Dana E. Perrin, referred the plaintiff to a rheumatology department at Tampa General but, interestingly, the hospital indicated on a note that "we do not treat '[f]ibromyalgia' [at the] [r]heumatology clinic" (Tr. 996). It does not appear from the record that the plaintiff sought further treatment for the condition or had received any treatment for that condition.

Contrary to the plaintiff's indication, the plaintiff's treating physician, Dr. Laura Ottaviani, on January 28, 2008, a month after the plaintiff's insured status expired, did not diagnose her as having fibromyalgia (<u>see</u> Tr. 648-649). While Dr. Ottaviani stated upon conducting a physical examination of the plaintiff, she "ha[d] 18/18 tender points noted for fibromyalgia" (Tr. 649), Dr. Ottaviani indicated that the plaintiff's pain may be a result of a condition other than fibromyalgia. Thus, Dr. Ottaviani noted that "I believe that some of her pain certainly may be coming more from a cervical radiculopathy or cervical facet problem and this I think should be explored further" (Tr. 649).

In this respect, Dr. Owen R. Smith, who examined the plaintiff on March 25, 2009, in referring to Dr. Ottaviani's record, concluded that "[f]ibromyalgia [was] never diagnosed by [a] medical doctor" (Tr. 734, 736). Dr. Smith also opined that the plaintiff's "subjective complaints are not consistent with the objective medical findings" (Tr. 736).

Moreover, since no doctor diagnosed fibromyalgia, no doctor indicated that the plaintiff had any limitations due to fibromyalgia. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). Consequently, even if there had been a diagnosis of fibromyalgia, that would not be sufficient to establish functional limitations. In light of the lack of medical evidence opining that the plaintiff had functional limitations from fibromyalgia, the law judge's generous finding of a severe impairment of fibromyalgia does not undermine his credibility determination.

Moreover, if the plaintiff had cited any legal authority at all on this point, I guess she would be asserting the principle that a law judge cannot discount the credibility of a claimant suffering from fibromyalgia on the basis of a lack of objective findings. That principle, however, is inapposite here. In this case, as previously shown, the law judge discounted the plaintiff's credibility on a number of factors, including her daily activities. In that situation, the Eleventh Circuit has upheld adverse credibility findings of claimants with fibromyalgia. Moore v. Barnhart, supra, 405 F.3d at 1212; Good v. Astrue, 240 Fed. Appx. 399, 403 (11th Cir. 2007). The plaintiff obviously has not cited any authority to the contrary.

For these reasons, the plaintiff's challenge to the law judge's credibility finding regarding the plaintiff's testimony fails. Notably, the law judge did not completely reject the plaintiff's subjective complaints. Rather, he concluded that they were credible to the extent they restricted the plaintiff to a range of light work. The law judge has adequately and reasonably explained the basis for that conclusion.

B.    Friend Testimony

The plaintiff also argues that the law judge erred in failing to give proper weight to the testimony of her friend, Tracy Long (Doc. 15, pp. 7-8). In support of her argument, the plaintiff asserts that the law judge must "make clear the weight accorded to each item of evidence" such as Long's testimony (id., p. 7). This claim borders on the frivolous.

With respect to Long's testimony and the plaintiff's friends' statements, the law judge stated (Tr. 27):

> In addition, the statements of the [plaintiff's] friends (Exhibits 7E, 8E and 25E) and her girlfriend['s] (testimony) do not establish that the [plaintiff] is disabled. Since it is not clear whether the [plaintiff's] friends are medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of their statements is questionable. Moreover, by virtue of their relationships as the [plaintiff's] friends, these witnesses cannot be considered ... disinterested third party witnesses whose statements would not tend to be colored by affection for the [plaintiff] and a natural tendency to agree with the symptoms and limitations the [plaintiff] alleges. Most importantly, significant weight cannot be given to the witnesses' statements because they, like the [plaintiff's], are simply not

consistent with the preponderance of the opinions
and observations by medical doctors in this case.

These are clearly adequate reasons for rejecting Long's testimony.

C.     <u>Treating Physicians' Opinions</u>

The plaintiff contends that the law judge did not consider properly the opinions of two treating physicians (Dr. Michael D. Boehm and Dr. Ottaviani) who indicated that she could not work (Doc. 15, pp. 9-10). This contention is also unavailing.

The plaintiff first asserts that the law judge's "reasons for discounting Dr. Boehm's opinion are erroneous" (<u>id</u>., p. 9). The plaintiff is referring to two occasions that Dr. Boehm opined that the plaintiff was disabled and unable to work. In particular, the plaintiff asserts that the law judge erroneously assigned no weight to Dr. Boehm's opinion "without consulting with a medical expert" and that "[t]here is no conclusive evidence that contradicts" the doctor's findings (<u>id</u>.).

On July 28, 2008, Dr. Boehm wrote a note that the plaintiff "is under my care for 1) severe, incapacitating osteoarthritis 2) major depression [and] 3) generalized anxiety disorder" (Tr. 655). Dr. Boehm opined that

"[s]he is unable to work at this time because of ill health" (id.). Thereafter,

Dr. Boehm wrote another noted dated August 13, 2008, through November

13, 2008, and stated that the plaintiff (Tr. 654):

> ...has been under my care for 1) severe, incapacitating osteoarthritis 2) major depression 3) generalized anxiety disorder[.]
> I see her once a month for exams and medication refills[.]
> She is unable to work due to the above conditions[.]

Notably, the Appeals Council had remanded the matter to the law

judge with specific directions to give further consideration to the opinion

from Dr. Boehm and to explain the weight given to it (Tr. 201). Accordingly,

the law judge summarized the doctor's opinion as follows (Tr. 26):

> **In complying with the Appeals Council directives**, the undersigned has considered the opinions of the [plaintiff's] treating internist, Dr. Michael D. Boehm, MD (Exhibit 3F). On July 28 and August 13, 2008, Dr. Boehm opined that the [plaintiff] was unable to work due to severe, incapacitating osteoarthritis, major depression, and a generalized anxiety disorder. Although Dr. Boehm had a treating relationship with the [plaintiff], the undersigned does not accord controlling, or great, weight to his opinions for the following reasons. First, there is no objective clinical or diagnostic evidence of "severe,

incacitating osteoarthritis." Specifically, the results of lumbar spine x-rays revealed only mild degenerative changes with only small osteophyte formation in 2006, the results of cervical spine x-rays showed only early degenerative disc changes with some osteophyte formation in 2008, and the results of MRI scans revealed spondylosis with osteophyte formation of the cervical spine and a disc bulge with osteoarthritis of the lumbar spine, but with only mild central stenosis 2009. Also, the results of July 2008 laboratory studied revealed a normal rheumatoid arthritis factor of 7.0 (normal range 0.0-13.9). Second, in February 2012, the psychiatric progress notes indicated that the [plaintiff] was not taking any pain medications (Exhibit 25F/4). Further, in August 2013, the orthopedic notations indicated that, "She [the plaintiff] has known posttraumatic arthritis [of the right ankle] since that time [2000] but it is not giving her any significant difficulty" (Exhibit 29F/1). Moreover, Dr. Boehm is a specialist in internal medicine, not psychology or psychiatry. Finally, Dr. Boehm's assessments are opinions on an issue reserved to the Commissioner of Social Security, who is the ultimate arbiter of the issue of disability. Therefore, the undersigned accords no weight to Dr. Boehm's opinions.

Thus, the law judge provided ample justification for not accepting Dr. Boehm's opinion that the plaintiff was disabled.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such

weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11ᵗʰ Cir. 2004). Good

cause exists when the treating physician's opinion is not bolstered by the

evidence, the evidence supports a contrary finding, or when the opinion is

conclusory or inconsistent with the physician's own medical records. Lewis

v. Callahan, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997).

Notably, the law judge's determination that the doctor's opinions

of the inability to work are inconsistent with the medical record, unsupported

by the objective medical evidence, and contradicted by the plaintiff's reports

of daily activity, can provide good cause for not giving that physician's

opinion substantial or considerable weight. See Lewis v. Callahan, supra, 125

F.3d at 1440.

In this respect, the conclusory nature of Dr. Boehm's opinions

is, in itself, a recognized basis for discounting a treating physician's opinion.

See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11ᵗʰ

Cir. 2004) (A treating physician's report "may be discounted when it is not

accompanied by objective medical evidence or is wholly conclusory.")

(internal citation and quotation omitted); Lanier v. Commissioner of Social

Security, 252 Fed. Appx. 311, 314 (11ᵗʰ Cir. 2007). Significantly, Dr.

Boehm's opinions mainly consisted of two notes that stated the plaintiff could not work due to her health condition.

Further, Dr. Boehm's treatment notes are mostly not legible (see Tr. 658-666, 694-696). Although unclear, it does not appear Dr. Boehm indicated in any treatment note that the plaintiff's conditions restricted the plaintiff's functioning. See Vesy v. Astrue, 353 Fed. Appx. 219, 223 (11th Cir. 2009) (rejecting treating physician's opinion when his treatment notes did not suggest the claimant was as limited as he opined later). Consequently, Dr. Boehm's opinions on the two notes that the plaintiff could not work could reasonably be discounted because they are conclusory.

Morever, the law judge, as indicated, summarized the objective medical evidence and reasoned that it did not support Dr. Boehm's extreme functional limitations. See Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 740 (11th Cir. 2008) (lack of supporting medical records may be considered in rejecting the treating physician's opinion); Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1159 (treating physician's report "may be discounted when it is not accompanied by objective medical evidence"). The plaintiff makes no

meaningful argument that the objective medical evidence supports Dr. Boehm's opinions (see Doc. 15, p. 9). The plaintiff on this issue did not refer to any treatment note by Dr. Boehm that would support his medical opinions.

In sum, the law judge explained that he discounted Dr. Boehm's opinions because they were conclusory and were not supported by the objective medical evidence. These are valid reasons for giving the opinions no weight. In other words, the law judge has provided good cause for discounting Dr. Boehm's opinions.

Finally, as the law judge pointed out, an opinion that a plaintiff is disabled is not a medical opinion and is an issue reserved to the Commissioner. See, e.g., Denomme v. Commissioner, Social Security Administration, 518 Fed. Appx. 875, 878 (11th Cir. 2013); Hutchinson v. Astrue, 408 Fed. Appx. 324, 327 (11th Cir. 2011).

The plaintiff also makes a one-sentence assertion that the law judge did not address Dr. Ottaviani's opinion that the plaintiff is unable to work as a court stenographer (Doc. 15, p. 10). Since this assertion is not supported by any citation to the record, the contention is appropriately disregarded as forfeited.

The lack of development of this point is noteworthy because, from all that appears, Dr. Ottaviani saw the plaintiff only once, so that she is not considered a treating physician. Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1160; McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). The plaintiff has not shown otherwise.

In his decision, the law judge considered Dr. Ottaviani's notes, which are in Ex. 2 of the record (Tr. 24). According to a treatment note dated January 28, 2008, Dr. Ottaviani stated in her treatment note under the section titled "social history" that the plaintiff "has worked as a court reporter, however, is unable to perform this job, she has not worked full time since 2002 because of the amount of pain that she has, most particularly in her right hand" (Tr. 648-649). The law judge could have discounted this opinion based on its conclusory nature. Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1159. Further, as correctly argued by the defendant, a disability determination is reserved to the Commissioner. Also, Dr. Ottaviani's opinion appears to be based on the plaintiff's subjective complaints as the opinion is found under the "social history" section of her treatment notes, and does not appear to be from a medical examination.

D.    Medical Expert

The plaintiff contends that the law judge erred in not obtaining the opinion of a medical expert regarding her fibromyalgia disorder (Doc. 15, pp. 10-11). The defendant correctly counters that the law judge was not required to obtain expert evidence regarding the plaintiff's fibromyalgia (Doc. 18, pp. 14-15).

The law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). However, the burden of proving disability rests primarily with the plaintiff. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. 416.912(a).

Furthermore, the law judge is not required to order a consultative examination if the record contains sufficient evidence for the law judge to make an informed decision. 20 C.F.R. 416.917, 416.919a; see also Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1269 (11th Cir. 2007) (The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision).

Moreover, a remand is not warranted due to a failure to develop the record unless the plaintiff can demonstrate evidentiary gaps in the record which result in "unfairness or clear prejudice." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991).

Here, the plaintiff, contrary to the Scheduling Order and Memorandum Requirements, does not cite to legal authority establishing that the law judge was required to obtain additional expert testimony, and, therefore, this argument is deemed forfeited (see Doc. 14, p. 2); see also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855 n.1 (11th Cir. 2013). Furthermore, the plaintiff does not state the purpose of obtaining the expert testimony (see Doc. 15, pp. 10-11). As previously explained, the law judge concluded that the plaintiff had a severe impairment of fibromyalgia. Thus, the plaintiff's conclusory argument does not demonstrate that an additional medical consultation was required or show the purpose of such a consultation. Therefore, this contention is baseless.

E.     Mental Impairment

The plaintiff argues that the law judge erred in determining that her mental impairments were not severe and in not according weight to her treating physician's opinion (Doc. 15, pp. 11-13). The law judge provided adequate justification for concluding that her depression and anxiety were not severe impairments.

In support of her argument, the plaintiff contends that the objective medical evidence demonstrates that her mental impairments are severe, that she has been receiving supporting counseling from Dr. Bharminder S. Bedi ("Dr. Bedi"), that her Global Assessment Functioning ("GAF") scores are "greater than mild" for functioning, and that she was Baker Acted in 2008 and 2010 (id., pp. 11-12). However, the plaintiff provided no citation to the medical evidence in support of her argument. Thus, this argument is forfeited. In any event, the plaintiff's arguments are meritless.

The law judge acknowledged the plaintiff's diagnosis of depression and anxiety, but found them to be nonsevere (Tr. 17). In this regard, the law judge provided a lengthy discussion of the plaintiff's mental

impairments, recognizing that medications controlled her mental impairments, that her GAF scores generally indicate moderate to mild symptoms, and that her issues mainly were medical in nature (Tr. 19-21).

Further, the law judge made findings regarding the four broad functional areas used in considering mental disorders. Thus, the law judge found that the plaintiff had only a mild limitation in activities of daily living; a mild limitation in social functioning; a mild limitation in concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 18). The regulations state that such findings generally result in the conclusion that a mental impairment is not severe. 20 C.F.R. 404.1520a(d)(1), 416.920a(d)(1). The plaintiff acknowledges those findings, but provides no citation to the medical record to refute the findings.

Further, the law judge's conclusion that the plaintiff did not have a severe impairment is supported by substantial evidence. The law judge recognized that three state agency psychologists' opinions concluded that the plaintiff did not have a severe impairment, and consequently assigned those opinions some weight (Tr. 20-21).

In this respect, Dr. John J. Wright, a psychologist, completed a Psychiatric Review Technique form on November 5, 2008, in which he concluded that the plaintiff had "panic disorder without agoraphobia partial medical remission" that was not severe (Tr. 680, 692). Notably, like the law judge, he concluded that the plaintiff only had mild limitations in the areas of activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation (Tr. 690).

Another psychologist, James G. Brown, also opined on a Psychiatric Review Technique form, dated February, 28, 2009, that the plaintiff's impairments of panic disorder without agoraphobia and adjustment disorder were not severe (Tr. 697, 709). He also concluded that the plaintiff had no limitation in activities of daily living, mild limitations of social functioning, and mild limitations in concentration, persistence or pace, as well as no episodes of decompensation (Tr. 707).

A third psychologist, Mercedes DeCubas, completed a more recent Psychiatric Review Technique form, dated January 31, 2011, opining that the plaintiff's mental impairments were not severe (Tr. 807). She also concluded that the plaintiff had no limitation in activities of daily living, mild

limitations of social functioning, and mild limitations in concentration, persistence or pace, as well as no episodes of decompensation (Tr. 817).

Also, the plaintiff was evaluated by psychologist, Robert G. Moering ("Moering") on October 7, 2008. Dr. Moering opined the plaintiff had "panic disorder without agoraphobia" and "adjustment disorder with depressed mood" (Tr. 677). He indicated that "[m]edications appear to have been helpful in controlling [the plaintiff's] anxiety" and that "[d]epressive symptoms are likely associated with her multiple situation stressors" (id.). He assessed the plaintiff as having a GAF of 64, which indicates mild symptoms on the scale (id.). Dr. Moering concluded that the plaintiff's "[p]rognosis should be good with appropriate treatment" (id.).

The plaintiff asserts that she "was hospitalized under the Baker Act between 2008 and 2010," but provides no citation to the record supporting this claim (see Doc. 15, p. 12). The law judge acknowledged that the plaintiff was hospitalized in 2009 due to a drug overdose, but explained that her condition improved (Tr. 19). In any event, the plaintiff makes no argument that she has any resulting limitations due to these hospitalizations.

The plaintiff weakly argues that her treating physician Dr. Bedi's

notes indicate that her GAF scores indicate her symptoms are greater than mild (Doc. 15, p. 12). The law judge acknowledged the plaintiff's GAF scores and concluded that they "reflected essentially only moderate-to-mild symptoms" (Tr. 20). As recognized by the law judge, GAF scores are not probative of mental disability. Thus, as the Eleventh Circuit recently held, "GAF Scores do not necessarily reflect a person's ability to do work." Thornton v. Commissioner, Social Security Admin., 597 Fed. Appx. 604, 613 (11th Cir. 2015). Further, the Commissioner does not accept GAF scores as meaningful in the Social Security context. Nye v. Commissioner of Social Security, 524 Fed. Appx. 538, 545 (11th Cir. 2013). That determination is supported by the fact that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (5th ed., 2013), p. 16, has discontinued the use of the GAF scale. Under these circumstances the law judge appropriately explained that the Commissioner has "declined to endorse the GAF scale for use in the disability programs" (Tr. 20).

Additionally, there is no opinion from a mental health source that the plaintiff's mental health impairments were disabling or caused work-related mental functional limitations. Moreover, the plaintiff does not

identify any mental functional limitations on her ability to work. In sum, the law judge gave an ample and reasonable explanation for finding that the plaintiff's mental impairments were nonsevere during the pertinent time period.

The plaintiff asserts that Dr. Bedi has been treating her mental illnesses and that the law judge erred in according that doctor's opinions little to no weight (Doc. 15, p. 12). However, the law judge provided ample reasons for not according controlling or great weight to Dr. Bedi's opinion. Thus, the law judge stated (Tr. 20):

> Although Dr. Bedi had a treating relationship with the [plaintiff], the undersigned does not accord controlling, or great, weight to Dr. Bedi's opinion for the following reasons. First, Dr. Bedi reported that the [plaintiff's] mental health condition was improving on medication management, even though the [plaintiff] was not always taking the medication as prescribed. In addition, Dr. Bedi stated that the [plaintiff] was doing well with the combination of Celexa and Xanax, which were controlling her panic attacks and depression. Further, while Dr. Bedi's handwritten opinion dated on February 10, 2012, at Exhibit 24F, is difficult to decipher, it appears that he indicated that the [plaintiff] was unable to sustain work activity because of medical problems, which would be supported by Dr. Bedi's statement at Exhibit

25F that the [plaintiff's] main issue appeared 'to be medical in nature.' Moreover, Dr. Bedi continued the [plaintiff's] psychotropic medications only on an as needed basis. Finally, the doctor's opinion appears to rest at least in part on an assessment of an impairment(s) outside his area of expertise. Significantly, Dr. Bedi is a specialist in psychiatry, not in orthopedics or pain management. In that regard, the undersigned finds it difficult to comprehend why Dr. Bedi advised the [plaintiff] not to take any pain medications. While Dr. Bedi appeared to accept the [plaintiff's] reports of pain, he did not perform physical examinations on the [plaintiff] and he did not have the benefit of reviewing the [plaintiff's] other medical reports contained in the current record. The undersigned also notes that Dr. Bedi **did not specifically state** that the [plaintiff] could not work, only that she **may not be able** to go out and find a job. Therefore, the undersigned accords little-to-no weight to Dr. Bedi's opinion.

Thus, the law judge provided ample justification for not accepting Dr. Bedi's opinion.

F.     Vocational Expert testimony

Finally, the plaintiff argues that the law judge "erred in relying upon the responses of the Vocational Expert to an incomplete hypothetical question" (Doc. 15, p. 13). This argument is also forfeited because, again,

there is no citation to the record of any supporting facts. Moreover, it is meritless.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, supra, 284 F.3d at 1227. On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161; see, e.g., Moreno v. Astrue, 366 Fed. Appx. 23, 29 (11th Cir. 2010) (unpub. dec.).

The vocational profile found by the law judge clearly matches the pertinent hypothetical question posed to the vocational expert (compare Tr. 22 with Tr. 128). Consequently, the hypothetical question is not flawed.

The plaintiff, therefore, has raised the wrong issue. Thus, rather than challenging the hypothetical question, she needed to challenge the law judge's determination of the plaintiff's residual functional capacity. Having failed to do so, this argument is baseless. Of course, in the absence of any citation to facts in the record, even a challenge to the residual functional capacity finding would fail.

IV.

For the foregoing reasons, the decision of the Commissioner is

supported by substantial evidence and does not contain reversible error.  I,

therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED  STATES MAGISTRATE JUDGE

DATED: JUNE 1, 2017

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections
to the Report and Recommendation's factual findings and legal conclusions.
A party's failure to file written objections waives that party's right to
challenge on appeal any unobjected-to factual finding or legal conclusion the
district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.